We have three cases that are being heard in tandem. Let me just move this chair. And we're going to start with two of them together, and then hear the third one separately. Counsel, you are arguing for the appellants in the first two cases. Yes, Your Honor. May it please the Court, Sheila Birnbaum, I represent Saint-Gobain, one of the defendants in this case. Mr. Danica, who represents Honeywell, will argue the Bacon case and the property damage parts. I'm going to concentrate on the medical monitoring issues in all of the cases. Proceed. Thank you very much, Your Honor. Koronia, which this Court is quite familiar with, in which you certified a question of whether medical monitoring is a stand-alone cause of action, decided that it was not. But that was not the only holding or the rationale or the policy behind the Court of Appeals' opinion. And we think Koronia is important and governs the outcome of this case. It is not nonsensical or dicta in that case, as the judge below indicated. What Koronia said, in effect, was that the fundamental principle of tort law in New York State was physical injury, that you cannot have a cause of action, even as consequential damages, without the presence of a physical injury. And why isn't finding a PFOA in the blood of the residents of Hoosick Falls a physical injury? Because it's not an objective manifestation of injury. It's an accumulation. It is a presence of exposure. And all of the cases which we'll discuss, that were the New York cases that the plaintiffs here have relied on, have all looked at it, even as consequential damages, that you have to have a physical injury, a manifest physical injury, an objective manifestation of symptoms. Why is that? And why isn't having this contaminant in your blood a physical injury? Because it doesn't do anything. It sits there. It's like... It sits there until? Until it does nothing. Nobody knows whether it will do anything to you or not. It is totally speculative whether anyone will have an injury as a result of this. Is it your contention that the court in Koronia addressed what it means to have an injury or a physical manifestation of a disease? It did, Your Honor. Let me explain where and how. It sorts out its decision by saying that the fundamental principle of tort law is you have to have a physical injury. And when you look... But doesn't it say... I'm going to interrupt you for a minute. No, that's all right, Your Honor. Because the court says plaintiffs do not claim to have suffered physical injury or damage to property. And it goes on the presumption that they have not in my reading. So I wonder why that is wrong. Because I understood that the physical injury aspect of the case had earlier been dismissed on statute of limitations grounds. So I don't understand what the court could have said here about injury. I'd like you to explain that. I think I can do that, Your Honor. The same thing is here, by the way. There is no allegation of physical injury here. What the plaintiffs have alleged is subcellular injury, which is the same thing that the plaintiffs in Caroni allege, subcellular injury. So here, too, there is nothing in the complaint. But isn't that really the question, is what is injury? Is it a physical manifestation of a bodily change that would warrant some increased medical monitoring, for example?  And there's a long spectrum in cases, in physical disease, that can start with before stage 1, pre-symptomatic, through stage 4 in cancer, for example. Okay. Right? So where are we on that? I don't see where the court's addressing that. Well, first, let me bring your attention to the dissent's definition of what it saw as physical injury. Because I think this is quite important. And actually, the dissent described it, I think in many ways, better than the majority did. Judge Lipman in the dissent said, and I quote, legal recovery alluded the plaintiff because they did not manifest the kind of physical symptomatic injury traditionally required for a valid tort claim.  He said they didn't have objective symptomatology, so they couldn't have had a traditional tort claim. But once again, that wasn't before the court at this stage. I mean, the presumption, the understanding was that the plaintiffs no longer were claiming physical injury. That wasn't even presented to the court of appeals. That is right. But there's no physical injury alleged here either. They don't allege there's physical injury. They allege that there's an accumulation of PFOA in the blood and that there's a risk of future injury. It's the same allegations that were enunciated in Koronia. We have a question maybe of physical impact or measurable manifestation of exposure and not just fear of cancer or emotional injury. There is a physical and measurable expression of exposure that's occurred that significantly increases the plaintiff's risks of disease. And so it's not purely imaginary. But once again, I'm having difficulty understanding why that was even before the court and why what Koronia did bears on our semantic discussion of what an injury is for these purposes. Well, I think, Your Honor, because the cases that the court looked at to determine what would happen with consequential damages, Abusio and, well, let's talk about Abusio first. And then we could talk about Askey, which was the second case. In both of those cases that the court looked at for New York law, those were consequential damage cases. Those weren't medical monitoring cases. So in Abusio, the court said, and it was a per curiam decision. It's not a lot of rationale by the Second Department in that case. In that case, the court said that you have to have something diagnosable. Exposure itself doesn't count. That's what we have here, exposure. But again, no, we have something that's different. There's exposure and then exposure that's expressed actually in a physiological change that's measurable, as Judge Pooler is pointing out. It's not a change. It's just that you can know that the PFOA is in the blood because you can test it. But the PFOA was at a level that was, you know, 30 times more than the average in the United States. It was some, but that is no indication that they're ever going to get a disease or that they have a disease. It's almost, Your Honor, it's like saying everybody who has breathed in asbestos and has asbestos in their lungs, they can show that they have asbestos fibers in their lungs. That doesn't mean they're ever going to get an asbestos disease. What if they could show actually that a certain level of asbestos or PFOA in your blood gave you a 300 percent chance of contracting cancer in the next five years? And that's exactly what Judge Breyer had before him in Buckley in the United States Supreme Court. People that had been exposed to large amounts of asbestos were wanted in medical monitoring. And he called them the common law. And he applied the policy that was adopted by the court in Koronia. And it was a policy-driven decision both in Buckley in the U.S. Supreme Court and in Koronia. And that policy decision is based on the theory and the weighing of the systematic problems that will occur in courts if you open up courts to medical monitoring with just accumulation as in this case. Why shouldn't we ask the Court of Appeals to tell us what it thinks an injury is for these purposes? I mean, after all, the statute of limitations has been altered by the legislature. Koronia spoke to this independent cause of action but did not focus on injury. We can't look to the dissent to understand what the majority would hold is an injury. Why shouldn't we ask them what an injury is for these purposes? Well, I've sat here before in Koronia, and that's exactly what you did. And maybe that's what you need to do here if you don't believe that the New York Court of Appeals and the cases that the New York Court of Appeals alluded to define what injury is. I would suggest to you ---- What should we make of Schmidt and the statute of limitations? I think those cases, Your Honor ---- Those started the statute of limitations running on an exposure, right? Yeah. And that's, as your adversaries point out, there's a long series of cases in New York that says that exposure was the injury that triggered the running of the statute. Your Honor, I think if you look at the Court of Appeals' decision in Koronia, they make it very clear that that group of cases have no bearing on what is injury. Those were just accrual cases. But again, Koronia didn't have the question of what is injury before. The plaintiffs had disclaimed any injury. Well, as they have done here. They don't plead physical injury here. Counsel? Yes. When would a cause of action accrue if someone living in Hoosick Falls developed a disease that was a sequelae of PFOA in their blood? Under 214C, Your Honor, it's clearly when they discover the injury. When it's discovered. Right. Clearly. That's why that ---- and or Honeywell would be responsible for the cost of that disease? Yes, Your Honor, not that way. They would at least have a cause of action for that disease. We would allege that was ---- And do you agree, as most medical experts argue, that early detection cuts down the cost of treating the disease? Not so, Your Honor, because we don't even know what the diseases are. And that ---- I don't agree that early detection is a plus. In some cases, it's a plus. In some cases, it's a negative. In some cases, it's really unclear. It would never be a negative to get early detection of a disease. Oh, you could get false positives. I'm not talking about false positives. I'm talking about early detection of a disease. But it's more than the early detection, Your Honor. It's whether medical monitoring will make any changes. Would it mean that you could be treated sooner? Many of these diseases, it doesn't matter. You can't be treated sooner. That was exactly what, in many of these other cases, that was exactly what was in Buckley, which was cited by the New York Court of Appeals as the policy reason. You've got to weigh the policy. Nobody is suggesting that medical monitoring, in some cases, might be a good idea. And the Court of Appeals says that. And Buckley says that in the U.S. Supreme Court. But the fact that it might doesn't mean that the other policy reasons for not opening the floodgates. Well, I don't know about floodgates. This is a small town, and we know how many people live there. So it's not as if all of upstate New York would be entitled to medical monitoring. But this is not the only case. It is estimated that 110 million Americans have PFOA in their blood. We don't know at what level. They haven't been tested. Are you prepared? 4,300 got it from St. Gobain and Honeywell. But if you open the floodgates here, it will be everywhere in New York State. Why would it be floodgates if the requirement were to plead a cause of action for medical monitoring that you plausibly state that at the levels that are detected in your blood, that you have a 95% chance that's clinically been demonstrated, you have a 95% chance of developing kidney cancer in the next year? If you had numbers like that, why is that not a discernible subclass that responds to your floodgates argument and that makes a plausible claim for medical monitoring early? Consequential to actual injury because the injury is there's an impact in a physical manifestation of exposure. First of all, there's no claim in New York for medical monitoring. It would have to be a regular tort and a consequential damages of that particular tort. But even there, all of the cases that have looked at consequential damages both before and after coronia, in this context, have held you have to have a physical injury. For example... But I'm saying that we were looking at a physical manifestation. This is not something that is purely emotional damages as was claimed in Buckley of fear. This is, as Judge Pooler has pointed out, an actual immeasurable impact. So it's not subject to imaginary claims. And you and I might disagree about whether it's an injury. You seem to be saying that only if you're symptomatic with a disease do you have an injury. That's right, Your Honor. And I'm looking to parse the language of injury a little further or perhaps to ask the New York Court of Appeals to do that because there's such a long continuum between having just an exposure, you just walk through the field, to having severely elevated levels. These are exactly the cases. In ASCII, in Ivory, in Abuzie, none of those cases. The only case in ASCII that went beyond for medical monitoring were the cases where people already had cancer, where the people were asymptomatic as the people here, but they had the drug, the substance in their body where they had been exposed. The New York appellate courts have held they could not recover consequential damages for medical monitoring. I think the New York courts understand what physical injury is. What if you're pre-symptomatic? What if you have, in terms of prostate cancer, you have an elevated PSA level and you're diagnosable but actually you have no symptoms? Is that an injury? Your Honor, if you have no symptoms, I believe under New York law as interpreted by the appellate division and the New York Court of Appeals, you have no injury. You have to have a physical manifestation and objective symptomatology. Even if you're diagnosable, if you have no physical complaint, you're not? Well, if you're diagnosable, then there might be objective symptomatology. No, but there are many cases. I mean, lung cancer typically isn't diagnosed until stage four and diagnosed by accident, but in fact you have the disease. That was the whole purpose in Koronia and the argument that was made. That was rejected by the New York Court of Appeals and that I believe would have been rejected if it was part of the consequential damages because they did not have a physical manifestation of injury. They were asymptomatic, just like these plaintiffs are. And if you open these floodgates, there are hundreds of millions of people who have been exposed to this. This is a ubiquitous chemical. It's all over the country. There is litigations all over the country on this. The only case, Rhodes, in which this was decided by a court held there couldn't be medical monitoring, not under New York law, of course, because there was no physical objective symptomatology. If you take away the physical injury piece of this, then we are really in a situation that I think Justice Breyer mentioned and was the rationale for Buckley, for the majority of cases in states that have followed Buckley, that without a physical manifestation, objective symptomatology, there is no end to the kind. And you'll be using up resources that will not be available for people who are really injured, who may really be injured, where you need those resources to pay those damages if there really is a causation here. We reserve five minutes for rebuttal. Thank you, Your Honor. We'll hear from the appellees in the Benoit and Baker cases. Thank you, Your Honor. Stephen Schwartz representing the plaintiffs in this case. Judge Amon, in her district court decision in Koronia, quoted the Seventh Circuit in saying that the cardinal sin of legal reasoning is to take judicial language out of its original context and apply it uncritically in a materially different context. I believe that the defendant's arguments are doing exactly that in this case. Why isn't this Koronia? Because Koronia, as the court has already indicated, was a far different factual scenario. When Koronia got to the Court of Appeals of New York, it left this court having dismissed all of the common law claims on statute of limitations grounds. Koronia, remember, the facts of the Koronia case were that they alleged that 20-pack-year Marlboro smokers had been exposed to excessive levels of tar and that they should have been offered lower-tar cigarettes during that time and that additional tar that they got increased their risk of getting cancer. So they didn't claim that inhaling smoke was a toxic injury because they had been smoking for more than 20 years before they found . . . But didn't they allege genetic and subcellular . . . No, but they alleged genetic and subcellular damage because that was the justification for doing the medical monitoring, but not as the injury because they couldn't claim that because they claimed their people would smoke anyway. And as the district court pointed out when it dismissed their medical monitoring claim, the piece that was missing from them is they were going to smoke anyway. They didn't prove that they wouldn't have needed medical monitoring even if they were smoking the lower-tar cigarettes. So it was a very unique situation that they were presenting there, and they couldn't claim that toxic inhalation was an injury because, first of all, the statute of limitations was blown, but secondly, their claim was not that smoking was dangerous. It was that these particular cigarettes had more tar than they should have had. So it was a very unique factual scenario. And as the court pointed out, in the very beginning of the Koronia case, the court pointed out that what you're seeking here is recovery without any claim of injury to person or property. And that's where the discussion took off. And in this case, what's the claim of injury? The claim of injury is the same injury that the courts in New York State have recognized for over 80 years. The courts in New York State, beginning with Schmidt and running entirely almost a dozen cases for 80 years after that through the case that this court cited in affirming the lower court, Snyder v. Town Insulation, this court quoted Snyder as saying, disease is not the injury. Injury occurs on exposure. Disease is a consequence of injury. And what Judge Case said in the Consorti case is that this is settled law of New York, that injury occurs on exposure. That's why you have not asked for certification to the New York State Court of Appeals. I don't think there's any reason, Your Honor, because what Judge Kahn did in this case, so what did the Court of Appeals do in Koronia? It first made the decision that it is not going to adopt a new equitable claim for medical monitoring stand-alone if there's no claim for injury to person or property. The second thing it did, though, is it affirmed or reaffirmed the law that had developed in New York State, beginning with Askey, that if there is a toxic exposure and the plaintiffs can prove that that toxic exposure was caused by the wrongful act of a defendant and that that toxic exposure provides reasonable evidence that they should get medical monitoring and those expenses will be incurred, then that can be recovered in consequential damages. That happened in 1984. In Abusio, the second . . . The injury is the breathing in of the toxic material? That is exactly what the Court of Appeals has said time and again, and they've said it explicitly, and each time they . . . So actually, the fact that the plaintiffs have exaggerated levels of PFOA in their blood really is irrelevant. You say everyone in Hoosick Halls has a cause of action, is that right? Because they all breathe this stuff. I'm saying that toxic exposure, by definition in New York, is an injury. Now, you can recover for injuries if you have the other elements of the claim, right? I mean, you have to be able to prove that that injury has consequence. You have to be able to prove that that injury was caused by the tortious act of another. But when you say has a consequence, what do you . . . In other words, if you can't prove that Ms. Birnbaum's example of breathing a couple of asbestos fibers because we all breathe them, you can't prove that that has specific consequence. Here, we're going to be able to prove that having PFOA levels at these levels, based upon the C-8 studies, increases the risk of illness, of AIDS-specific illnesses. So we will be able to . . . Yeah, but what you've said is that there are illnesses associated with PFOA, and we don't really know what levels of PFOA . . . Oh, Your Honor, we do know. The epidemiology literature shows that PFOA levels, once they get to certain levels, and that there's a dose-response relationship with regard to various diseases, there are biological effects that occur very early in the curve as they go up. Can you say what chance a plaintiff with a PFOA level at the plaintiff's level . . . 50 parts in their blood, 30 times the ordinary . . . Your Honor, it's not susceptible to that type of logarithmic approach, but the epidemiological literature is very strong on that. And, again, that's not before the court. The issue before the court . . . But I'm looking for something more than casual exposure, because otherwise, I mean, Ms. Birnbaum says everyone who's sick falls was exposed. Well, Your Honor . . . And I'm trying to understand if that's so, and if the literature is what you say it is about the causal connection between the exposure, regardless of blood level, and disease, why isn't the whole town here? Why aren't . . . Why isn't everyone who's walked through who's sick falls a potential plaintiff here? Why don't we have the floodgates problem that Ms. Birnbaum is alluding to? Well, the floodgates problem . . . Let me go back a step. When people are exposed to PFOA or were exposed to PFOA before it was banned, basically, through a lot of different ways with regard to consumer products. There were wrappers for food products that had PFOA in them. So the background levels are principally from, in the background population, are from those exposures that have . . . And that level has been going down steadily since the chemical got taken off the market and out of those products. But people that drink contaminated water accumulate PFOA in their body over 100 times above what the level is that's in the contaminated water. So the people that drink contaminated water are in a whole different set than the rest of the population that has very minor casual impact with PFOA from the wrappers of microwave popcorn and things like that. So what level is an injury from your point of view? How should we understand injury? Is there a minimum level? I know I'm asking three questions. No, and I understand, Your Honor, and it's a good question, but I think the appropriate question is what does New York law and what has New York law for 80 years recognized to be an injury? The injuries that New York law has recognized, New York law has recognized that toxic exposure is an injury. And that's why the statute of limitations had to be changed, the accrual statute had to be changed in New York because people who were exposed were injured and then they didn't get to . . . So there's no minimum level. Is that right? There absolutely is no minimum level that's absolutely safe for PFOA, but, again, there are proof issues with regard to lower levels as to whether that's significant enough to require medical monitoring. We have to prove all that. This is not something that if this court affirms the lower court that suddenly everyone's going to get medical monitoring. We've got to prove all that. But my point, Your Honor, is that this whole floodgates issue is really . . . I mean, the floodgates have been open since 1984 and there's been no flood. What Judge Kahn did is follow what Askey said and what Abusio said in 1997, all of which said that it's sufficient if you prove that you've had a toxic exposure and that increases your risk of incidence of disease, you have a right to try to prove that you're entitled to medical monitoring. You have to prove it, but you have that right. And that has not changed. There's nothing in Judge Kahn's decision . . . . . . the accumulation plaintiffs would have the right to medical monitoring and the non-accumulation plaintiffs would not? Well, I don't know. There are no non-accumulation plaintiffs. Well, they are the ones who don't have the PFOA in their bloodstream. Yes. I would say that if they don't have . . . In other words, the claim here is that the wrongful conduct of the defendants in causing the contamination of the groundwater caused these people to accumulate PFOA at very high levels and puts them at increased risk of disease. That's a unique set of people. That's not everyone that walked through town. The Court of Appeals was aware of Schmidt when they decided Koronia. Because Schmidt says just breathing in the deleterious dust was sufficient. But how did they decide Koronia then? They decided Koronia because, as the Court pointed out, the plaintiffs in Koronia didn't make that argument. They claimed that they didn't have any present injuries. I see. And what happened at the end of . . . They claimed that they smoked. They claimed that they smoked, but they didn't claim that was the injury. They claimed their injury was the extra tar from the smoke, and they had been smoking for 20 years, and they said they were going to smoke other kinds of cigarettes if Marlborough had lower-tar cigarettes. So they couldn't make that argument, and that was never before the Court. The Court never dealt with the issue of injury, but it did cite Abusio and Askey and Schmidt, and it didn't overrule them. And then at the end of the case, and that's the important thing. So what the Court of Appeals did in Koronia are two things. The first thing they did is said they're not going to adopt this new equitable cause of action. But the second thing is that they reaffirmed what New York had been doing. And with regard to Askey and Abusio and Ozark and Dangler, they said that if you can prove that you have a toxic exposure injury, and that's a sufficient injury, or if you have an injury to property, then you have an existing tort claim based upon either the injury to person or injury to property, and if you do, then you can seek medical monitoring damage. It doesn't mean you can get them, but it means you can seek them. And so they reaffirmed that whole line of cases. And what the defendants— The policy addressed in Koronia, they said it's speculative at best whether asymptomatic plaintiffs will ever contract a disease, and awarding them damages might deplete funds for injured plaintiffs. Doesn't that suggest that the Court of Appeals is very sensitive to the kind of concerns that Ms. Birnbaum was alluding to, that once people have actually contracted a disease and require treatment, what's available for them is going to be depleted if we go through this early medical monitoring for people who have at most minimal levels of accumulation in their blood and have no either symptoms and no diagnosable disease? That entire discussion, Your Honor, was in the exact context that you pointed out, was in the context of whether people who claimed no prison injury could have this new cause of action. In other words, whether the Court of Appeals should create a new equitable cause of action. That's where that discussion was. If the Court wanted to make a broad statement that only symptomatic plaintiffs could get medical monitoring, then it could have done it in that conclusory paragraph that I mentioned, where it said what the courts have been doing is what New York will continue to do, and that is allow consequential medical monitoring damages. The court could have enunciated a new rule at that point, and they could have said, although the Abusio case says that it only takes a clinically demonstrable measurement of the toxin in the body, we're not going to follow that rule anymore. Now we're going to require more because of the reasons you said. But the Court of Appeals didn't say that. They had every chance to say it, but they didn't. The reason they made that discussion was because they were grappling with the issue of whether they should create a new stand-alone claim for medical monitoring in a situation where the plaintiffs claimed they didn't have an injury at all. Could you address how your theory interacts with CPLR 214C? Sure. Why we should think about the statute of limitations running and discovery of latent disease where we have some level of exposure. Absolutely, Your Honor. There are two cases that were decided with regard to this injury issue after 214C came into play. The first one was consortium that I've mentioned, and in that case it was an asbestos case, and the husband in the case, the decedent, had died of mesothelioma. The wife brought a loss-of-consortium claim together with the claim of the husband. When they got to the trial court level, there was a motion to dismiss the loss-of-consortium claim. In New York, loss-of-consortium can only be recovered if the injury occurs after the marriage. If the injury occurs before the marriage, loss-of-consortium doesn't come into play. So what happened in the case is the court of appeals said, although the legislature has changed accrual, we haven't changed the definition of injury. The injury in that case occurred. Does it say the legislature changed accrual? I thought they hadn't changed accrual, but they had told the statute until it was done. Well, it's the same. In other words, I— It's not really the same thing. Okay. They basically—I'm sorry. Exactly, Your Honor. The accrual occurs, but it's told until there's discovery of the injury. That's the right terminology, and I apologize for that. But what the court held was that the mesothelioma claim for the husband could proceed under 214C, but the wife's claim couldn't because the injury that gave rise to the cause of action occurred before the marriage. And the same thing happened at basically what Judge Wesley made it very clear. When Justice Wesley was on the court of appeals, he decided—he wrote a decision in a case called MRI rental, Broadway rental. The very outside of that case, Judge Wesley makes it clear that although the legislature changed the rule with regard to tolling, it didn't change the definition of injury in New York, which is the same definition of injury for toxic invasion that New York has followed since Schmidt. And so those two cases make it very clear that the court of appeals did not view the legislature as changing the definition of injury. And, in fact, they said that, that this was a solid New York State rule that has never been changed. And as a matter of law, it's an injury. So that's the context that Judge Kahn is working in. We have a state that says that toxic invasion is injury. We have the court of appeals saying that the D'Abusio standard of clinically demonstrable chemical in the body is sufficient to warrant medical monitoring damage. And that's what Judge Kahn followed. Can you address the alternative theory that you've proffered about property damage being a sufficient basis as well? Sure. I think what the court of appeals said at the end of Koronia was that if you have— in other words, what the Koronia distinction was between whether they were going to create a new cause of action for this unique group of people with this unique claim or not. And they said that they were not. But at the end, they said, if you have a stand-alone traditional tort claim, and that requires either injury to person or injury to property, then consequential damages of any type can be obtained. So what the court of appeals was saying there, and I think that's what— These would be consequential damages to property damage. Yes. And, in fact, the only case, the only New York State court, appellate court, that has interpreted Koronia in ivory said exactly that. They interpreted Koronia, quote, as saying, Koronia allows for medical monitoring damages to be recovered even if you prove property damage. Because property damage is enough to justify a traditional time and law tort claim, and the consequential damages flow. And the nexus between the property damages, there needs to be some kind of nexus, I assume, between the property damage and the medical monitoring. Well, the court of appeals did not enunciate that. But for certain, with regard to toxic exposures, we're talking about contamination. And so if property is contaminated, then people have the right to bring a claim for property damage, which is the next thing I'd like to talk about if I get a few moments. And so if they have a claim for property damage, the court of appeals said, and the ivory court interpreted the court of appeals in Koronia saying, they would have the right to consequential medical monitoring damages too. Now, again, the right to collect the damages and proving the damages are two different things. You obviously have to make all the elements of proof out. The question is whether you get into the courthouse in the first place to try to make those claims. And New York has explicitly said, yes, they do have the right to get in and make those claims. And as I said, the floodgates that Ms. Birnbaum is worried about are not something that are going to be open because of this case. They were open to 1984. Could you clarify also for me, please? Would you be looking for a lump sum payment to cover costs of medical monitoring over the lifetime of an individual, or would you be looking for the establishment of a program of some kind? Establishment of a program of some kind, and what we would ask for in the class action context is for the class action to develop that program. Medical monitoring is not something that is a scientific process. ATSDR, for instance, the federal agency has guidelines for setting up medical monitoring programs under what circumstances, under what types of protocols are appropriate. These are the things that experts follow when they set up medical monitoring programs. Some people get more monitoring because of the levels and because of their other risk factors. Some people get less. This is a very delicate and complicated issue, and this is something that's susceptible to proof. What we want to do is get through the door to prove that. We still have to do that, Your Honor, but there are accepted protocols for medical monitoring that would benefit these people, and under New York law, they've been injured sufficient to bring a cause of action. That's really all that Judge Kahn decided is that now we go to the next phase of having to prove all that, and that's what we will do. We're not class certified as yet, right? It's only individuals in the Benoit case and in the Baker case? The Baker case is the class action. The Benoit case are individual cases, and there has been no class certification yet. We're still in the discovery phase. We have a class certification coming up. So deal with the floodgates argument. Are more people going to come in to this class, or are they limited by the meets and bounds of the town of Hoosick Falls? Well, they're limited by the people who drank contaminated water in Hoosick Falls and drank enough of it so that they'll have elevated levels, and so it's not a – people are not going to flood from – and that's why the property values are so devalued. But the reality is, Your Honor, that this is a circumscribed group. And again, there's nothing new about this decision. There's nothing – in affirming this decision, you're going to change New York law not at all because all that Judge Kahn did is follow New York law as the Cronia case pointed out. Abusio, Allen – How do you know what the boundaries actually are? If the aquifer was contaminated, you say this is a circumscribed group. Circumscribed by what? Well, we have two groups. We have the people who are on public water. That's a prescribed group because we know what people are on public water. The public wells were contaminated. They drank contaminated water from the public wells. They have now tested numerous wells all throughout the area, and some test positive for PFOA, some don't. It depends to some extent on the wind direction. It depends how deep the wells are. It depends on what the soil conditions are. Some of the PFOA gets down to the wells, some of it doesn't. But in order to be in the class, they have to have a contaminated well. Either they have to be – And if you're on public water? If you're on public water, you would have to be drinking the public water. You'd have to live in a residence where you drank the public water for a sufficient period of time to have accumulation of PFOA in your body. It's not an unlimited class. These are problems in ascertaining who would be eligible for monitoring. Yes, and in other words, that's what the proof will be, and our class definition will have to encompass that, and the court will wrangle with the best way to identify the people that belong in the class and the people that don't. But those issues haven't been broached yet. I mean, we've alleged that we've pleaded, but we don't have a class certification yet. Thank you. Thank you very much. Ms. Birnbaum, you have reserved five minutes for rebuttal. Thank you so much, Your Honor. There were so many good questions. Let me just try to start at one point. The plaintiffs in Koronia argued the same cases the plaintiffs here are arguing, the Schmidt exposure cases. And the Court of Appeals, I think, answered that Schmidt and its prodigy just don't apply here. And the reason is obvious. The court says the accrual rule set forth in Schmidt and referenced in Askey was replaced by CPLR 214. And to make it even clearer — Right, but they didn't change the basic rule that just breathing in the deleterious dust was when the injury took place. But that was never the rule actually in New York. It was just the statute of limitations purposes, and I'll go on to explain why. But there's another case, Blanco v. American Telephone in the New York Court of Appeals in 1997, two years after Consortium, where the court said CPLR 214C was enacted to abrogate the exposure rule. Abrogate it. It has no meaning any longer, and the whole line of cases don't apply. Now, they ask the question, why, if this is the rule over all these years in New York, why we haven't had floodgates? Well, the reason is it's clear, because there's a physical injury rule, because you couldn't bring the case. Forget about accrual, the statute of limitations. Forget about first breath. Remember, these cases are first breath cases. You take your first breath of asbestos, and the statute of limitations runs. That's a ridiculous rule. That doesn't mean you have any injury, and they didn't have any injury, all of these plaintiffs, and they never got medical monitoring damages in New York for asbestos exposure. Why? Because the Court of Appeals goes on to say, the appellate division has consistently found that medical monitoring is an element of damages that may be recovered only after a physical injury has been proved. And, Your Honor, you may have a problem of what is physical injury, but you need a physical injury. So now let me just bring your attention, and this is in our brief, the DES cases in the New York Court of Appeals in which the Court talked about what is physical injury. The Court said physical injury is the resulting illness, the resulting infirmity, a discernible bodily symptom. Manifestation or symptoms of the latent disease that the harmful substance produced. The New York Court of Appeals... Does that position mean that medical monitoring is really never recoverable? Because if you already have the disease, what's the point of monitoring? Because you can monitor for other things. And that's exactly what the Court held, the appellate division, in Askey, in Ivory, and in Mabuzio. In Mabuzio, there was exposure, and the Court said there was exposure. But there was no clinical manifestation of injury, and they dismissed the cases for medical monitoring. The phrase clinical manifestation gives me a problem. You want a symptom. You want a diagnosable... I don't want it. The New York Court of Appeals wants it. Well, in understanding what injury means, I might feel injured if I had raised levels of a toxic substance in my blood. That's not an injury under the New York definition. I agree with you that you might feel injured, I might feel injured, I might feel I want medical monitoring. But that's not the test. The test is, was there some objective symptomatology? And there isn't here. There's just... Your scenario, then, is once you are sick, you can get monitoring for other things that also might make you sick. Right. And that's what the Court says in Ivory. It dismisses in Ivory. There were two in Ivory. This is the appellate division. This is after coronia. This is on consequential damages. There are some of the plaintiffs that have cancer already, and some of the plaintiffs are asymptomatic. The asymptomatic plaintiffs are dismissed because they have no objective manifestation of injury, and the cancer patients are allowed to get medical monitoring damages. Counsel, the defendants have not asked for certifications in the New York State Court of Appeals because you think they've said it all. I think it's all in our briefs, Your Honor, and I think they have defined what injury is, and I think if you look at Abusio and you look at Ivory, you'll see it. Do you think there's any ambiguity in the law of New York State as it stands now? If it was any different, if they are right that exposure is enough, we could have seen that in the cases already. Well, it's not so much it's breathing in the exposure, right, and it comes to your body and it accumulates there. That is not sufficient under New York law. Either coronia, ASCII, Ivory, the appellate divisions, and under Erie, the court below should have looked at those cases, adopted those cases, and not replaced its own policy. I have to interrupt for a second. So I'm just looking at Abusio, and I'm reading, this rational basis for a fear has been construed to mean the clinically demonstrable presence of PCBs in the plaintiff's body or some indication of PCB-induced disease, i.e., some physical manifestation of PCB contamination. That sounds short of diagnosable or symptoms to me. Well, they got dismissed, and they had clearly evidence of exposure. When you look at the decision, it says there's evidence of exposure, but there's no evidence of a clinical manifest disease or injury. And so how is the ---- They failed to present any clinical evidence of PCB contamination. Right. But there was exposure, because I think when you look at all of these cases and look again at Ivory and look again at Abusio and look again at the appellate division courts and consider the court's DES opinion, because it did lay out what it believed was a physical injury. Now, let me just end up with the property damage. First of all, they haven't pled property damage. They've pled that they've been exposed to contaminated water. They have never pled that there was any contaminated soil on their property. So there is no property damage here, and Mr. Danaher will cover that, I think, in the next argument. But even if there was, I think what the New York Court of Appeals is saying, in tort law, you have to have either physical injury or property damage. That doesn't mean medical monitoring has to do with physical injury. You have to have a physical injury. You have to have a manifestation of that. If Your Honor believes that just a blood test is an injury, we would argue that it's not, and nobody in New York has said that. And if that's necessary to go to the New York Court of Appeals to clarify that, then I think that's at least another step that this Court can take. We think that the definition, and we cite many different definitions from different courts in our brief, is sufficient that this is not a physical injury. And they don't plead physical injury. They plead exactly what was pled in Koronia, subcellular injury. There's no difference between the accumulation of tar in a person's lungs and the accumulation of blood in a person's blood that might have PFOA in it in the person's blood. Thank you so much, Your Honor. Thank you.